## Gerhard's Estate.   Moyer's Appeal.

*Wills—Vested and contingent interests—Estate tail—Personal property— "Bodily heirs."*

Generally, words which will create an estate tail in a devise of a freehold, will confer an absolute interest in a gift of personal property; but where there are any words or expressions in the bequest showing that the testator did not intend "issue" or "bodily heirs," or their equivalents, in their technical sense, but that he used them in the popular sense of "children," such words and expressions are sufficient to displace the operation of the rule and limit the interest of the first taker to an estate for life; and where the expressions "leaving issue," or "leaving bodily heirs," have been used by a testator in a bequest, they have universally been held to denote "children."

Testator bequeathed to his daughter a sum of money which he charged in certain proportions on three farms which he devised to his three sons. He directed that "the respective owners or occupiers of said farms shall pay the annual interest at the rate of five per cent to my said daughter during her natural life, and upon her decease said principal sum shall be paid to her bodily heirs in equal shares, and in case my said daughter shall die without leaving bodily heirs then the said sum of fourteen hundred dollars shall revert and fall back to my estate and shall be paid to

my other children and their heirs." *Held*, that the daughter took no in-
terest in the corpus of the fund, but only the income thereof during her
life.

Argued Feb. 28, 1894.    Appeal, No. 350, Jan. T., 1894, by
Mary Moyer, from decree of O. C. Berks Co., distributing es-
tate of John Gerhard, deceased.    Before STERRETT, C. J.,
GREEN, WILLIAMS, McCOLLUM and FELL, JJ.    Affirmed.

Exception to adjudication of executor's account.

The following opinion was filed by BLAND, P. J.:

" The exception complains that the court erred in distribut-
ing to Mary Moyer the sum of $1,400, made up as follows:
(*a*) Charge on land sold to Adam Gerhard, $600.    (*b*) Charge
on land sold to William Gerhard, $400.    (*c*) Charge on land
sold to David Reber, $400.

" The provision of the will of the decedent, under which the
distribution was made, is as follows:

" ' Item. After the decease of my said wife I order and direct
that all my real estate owned by me at the time of my decease,
as well as all the personal property then remaining, shall be sold
at public sale by my hereinafter named executors. . . . And
the money arising from such sale or sales, together with all the
rest, residue and remainder of my estate whatsoever the same
may be, I give and devise the same unto my eight children,
Isaac, Lydia, wife of John Shaffner, Mary, wife of Aaron Moyer,
Rebecca, William, Daniel, Sarah, wife of Adam Stoudt, and
Adam, share and share alike, and their heirs. . . .

" Item. My will is and I order and direct that of the share
hereinbefore given and bequeathed to my daughter Mary, wife
of Aaron Moyer, the sum of $1,400 shall remain charged on
my real estate as follows, etc.: six hundred dollars ($600) there-
of shall remain charged on my farm at present occupied by my
son Daniel; four hundred dollars ($400) thereof shall remain
charged on my farm at present occupied by my son Isaac, and
four hundred dollars (400) thereof shall remain charged on the
farm whereon I and my son Adam at present reside, of which
several sums the respective owners or occupiers of said farms
shall pay the annual interest at the rate of five per cent to my
said daughter during her natural life, and upon her decease
said principal sum shall be paid to her bodily heirs in equal

shares, and in case my said daughter shall die without leaving bodily heirs, then the said sum of fourteen hundred dollars shall revert and fall back to my estate and shall be paid to my other children and their heirs.'

" Exceptions to said distribution were filed by the executors, in that character, on the 4th day of January, 1893, which, in an opinion filed April 19, 1893, were overruled, one of the grounds for the action of the court thereon being the want of interest of the executors, as such, in the subject-matter of the exceptions. In order to obviate the objection of want of interest in the original exceptants, a petition was presented to the court on the 9th day of May, 1893, praying that Adam Gerhard and Daniel Gerhard be allowed to file exceptions to the original adjudication as heirs and legatees of the decedent; and an order was made on the same day granting the prayer of the petition.

" The exception now before the court was filed in pursuance of the order so made, and properly raises the question as to the interest of Mary Moyer in the said $1,400 charged on the real estate of the decedent, in pursuance of his will as above set forth.   The gift to her, in the first instance, is absolute, i. e., to her and her heirs ; and the controversy is upon the effect of the subsequent direction to charge the $1,400 on certain real estate of the decedent, the owners thereof to pay the interest thereon to Mary Moyer during her natural life, and the principal upon her decease to her bodily heirs in equal shares ; and in case she should die without leaving bodily heirs, the principal to revert and fall back to testator's estate, and to be paid to his other children and their heirs.

" Generally, words which will create an estate tail in a devise of a freehold will confer an absolute interest in a gift of personal property ; but where there are any words or expressions in the bequest, showing that the testator did not intend 'issue' or 'bodily heirs,' or their equivalents, in their technical sense, but used them in the popular sense of 'children,' such words and expressions are sufficient to displace the operation of the rule and limit the interest of the first taker to an estate for life ; and where the expressions 'leaving issue,' or 'leaving bodily heirs,' have been used by a testator in a bequest they have universally been held to denote 'children.'

" It was said by GIBSON, C. J., in Seibert v. Butz, 9 Watts,

494, that 'there is perhaps no case in which the limitation over of personal estate, after an indefinite dying without issue, whether the first limitation were indefinite or expressly for life, has, ex vi termini, been confined to a dying without issue at the time of the death; but the courts have seized with avidity on any circumstance, however trivial, denoting an intent to fix the contingency at that period.' The law, as stated by Judge GIBSON, has been often applied by the courts since his time; and so recently as Miller's Est., 145 Pa. 561, and Wallace v. Denig, 152 Pa. 251, his statement of the rule has been repeated and applied in terms.

"It seems to have been the law since the case of Pinbury v. Elkin, 1 P. Wms. 563–4, decided in 1719. There the testator bequeathed to his wife all his goods and chattels, made her his executrix, and provided that if she should die without issue by him, then, after her decease, £80 should remain to the testator's brother, J. S. The testator died; next his brother died; and subsequently the widow died, without issue. It was held that the will meant issue living at the widow's death, and that the executor of J. S. was entitled to the legacy of £80.

"Next came the case of Forth v. Chapman, 1 P. Wms. 664, decided in 1720. That case, doubtless, is the true authority for the case here, for the reason that the bequest over was given upon the contingency of the first legatees leaving no issue. There Walter Gore devised a leasehold to his nephews, William Gore and Walter Gore, and if either of them should die and leave no issue of their respective bodies, then he gave the leasehold premises to the daughter of his brother William. The nephews having died without issue, the question was whether the limitation over to his niece was too remote. . Lord Chancellor PARKER decided that it was not, and said: 'The reason why a devise of a freehold, to one for life, and, if he die without issue, then to another, is determined to be an estate tail, is in favor of the issue, that such may have it, and the intent take place; but there is the plainest difference betwixt a devise of a freehold and a devise of a term of years; for in the devise of the latter to one, and, if he die without issue, then to another, the words, "if he die without issue," cannot be supposed to have been inserted in favor of such issue, since they cannot by any construction have it.' The case of Forth v. Chapman has

been repeatedly cited and approved by our Supreme Court. In Clark v. Baker, 3 S. & R. 477, TILGHMAN, C. J., said of it: ' These words, " without leaving issue," applied to personal estate, have been held to mean issue living at the death of the person to whom the property is given in the first instance. But not so with regard to land. This is the distinction taken in Forth v. Chapman, 1 P. Wms. 667, and it is well founded, because it carries into effect the intention of the testator.'

" In Amelia Smith's Appeal, 23 Pa. 9, the rule established by Forth v. Chapman was distinctly recognized by LOWRIE, J., who, at page 10, said : ' Now as to personal property. Let it be noticed that the legacy is in terms absolute, and that it is qualified only by the bequest over on his death without issue. But these are words of entailment, and, therefore, when applied to personal estate, they pass the absolute property. A different construction is usually put upon the phrase " dying without leaving issue," when applied to personal property. It is a general, though not universal, rule that words which, when applied to land, would create an estate tail, will, when applied to chattels, pass the entire interest. How can it be otherwise? Chattels cannot be inherited. They pass to one set of representatives, and land to another.'

" In Still v. Spear, 3 Grant, at page 307, STRONG, J., said : ' The property which the plaintiff below seeks to reach by his attachment is personalty. Laying aside for the present any notice of the trust, and treating the gift as directly to Levi, the first taker, we have a legacy of the interest of a fund to him indefinitely, and, in case he should die " without leaving issue," a gift of the principal to the children of Charles. The case is then completely within the rules laid down in Smith on Executory Interests, 599, 600, which are as follows : " Where personal estate is limited, either directly to, or by way of executed trust for a person indefinitely, or for life, with a limitation over on indefinite failure of his issue, the whole interest vests in the ancestor. But where the limitation over is on failure of children only, or on failure of issue within a given time, the ancestor will have a life estate with a limitation over of a springing interest, or the entire interest with a conditional limitation over." The limitation over to the children of Charles is not a limitation after an indefinite failure of issue. Notwithstanding the

doubts which have been expressed in some cases, it is now settled, that in gifts of personalty the phrase, "die without leaving issue," means die without leaving issue living at the death of the person; the failure of the whole issue is spoken of.'

"In Train v. Fisher, 15 S. & R. 148, DUNCAN, J., said: 'Personal estate cannot be entailed. It makes no difference in regard to the rules of construction, whether the use, interest or profits be given, with a limitation over of the thing itself, or a bequest of the thing itself. This was formerly a finespun distinction, which, in process of time, as personal property increased in estimation, and the liberality of courts extended, has been exploded; and it is now perfectly settled that, whether it be a bequest or its use, makes no difference. The principle is that where there is a limitation of a chattel by words which, if applied to freeholds of inheritance, would create an estate tail, in personal estate the whole interest vests absolutely in the first taker. There is a distinction, however, as to the words "dying without leaving issue" between a devise of real estate and personal estate; in the former generally they seem to be construed to mean indefinite failure of issue; in the latter, issue at the time of the death of the first taker.'

"In Hopkins v. Jones, 2 Pa., at p. 71, SERGEANT, J., said: 'The words "die without lawful issue" are to be construed, in case of personal estate, to mean "die without leaving lawful issue," when that corresponds with the testator's intent: Pinbury v. Elkins, 1 P. Wms. 563.'

"In Miller's Estate, 145 Pa., at pp. 565–6, Mr Justice STERRETT said: 'But the courts have seized with avidity on any circumstance, however trivial, denoting an intention to fix the contingency at the time of the death: Seibert v. Butz, 9 Watts, 490. And accordingly, in Snyder's Ap., 95 Pa. 174, where the bequest was to H., and if he should, "at any time, die without issue I then give and bequeath" over to all testator's children, it was held that the use of the words "at any time," and "then" imported a definite failure. So, when the time at which the devise over is to take effect is expressly or impliedly limited to a particular period within a life or lives in being and twenty-one years after, or if he die without leaving issue behind him, or leaving issue at the time of his decease, or if the devise over be of a life estate, which implies necessarily that such devisee

may outlive the first estate, the testator has been considered as meaning a failure of issue within a fixed period, and not an indefinite failure.'

"In 2 Roper on Legacies, p. 1551, the learned writer says: 'Again, the words "leaving" or "leave" have been held suffi-· cient to restrain the general import of the term "issue" to those living at the death of the first taker, so as to give effect to the bequest over, upon there being no such issue in existence at that period.  Thus, where a testator bequeaths a legacy to A generally, or to A for life, and in case he should die leaving no lawful issue then over; or to A, his executors, administrators and assigns, and if he die before twenty-one, leaving no issue; or to A generally, or for life, and to the heirs of his body, and if he die leaving no heirs of his body to B; or to A and his heirs, and if he die leaving no lawful heirs, to B; or to the children of A living at his death, and if such children should die without leaving issue, to B; or to A for life, and to his heirs·male after him, and if he should not leave any son, then over.'

"The foregoing citations show how little vigor technical. words, importing presumptively the gift of an inheritance, have,· when used in a bequest of personal property; and how easily their presumed meaning, as words of inheritance, is overcome by expressions of the testator tending to show that he did not use them in their legal sense.  If, upon a fair construction of the words of the will, it is manifest that the testator intended a failure of issue within the period allowed for the vesting of future interests, by the rule against perpetuities, the failure of issue intended is, in a legal sense, a definite one, and a gift over is good; and in the ascertainment of the testatorial intent courts are satisfied with any reasonable indication of such intent.  Not only does Forth v. Chapman furnish an example of the rule of construction for cases of this kind, but also the probable reason for the rule, in the words of Lord Chancellor PARKER, at p. 666, where he says: 'Besides, the testator, who is inops concilii, will, under such circumstances, be supposed to speak in a vulgar, common and natural, not in a legal, sense.'

"As shown by the above authorities, the word 'leaving,' in the connection in which it is used by the testator, would seem to fix the decease of Mary Moyer as the point of time in the mind of the testator, when a failure of bodily heirs of Mary·

was to vest the $1,400 absolutely in the other children of the testator.    But it seems to the court that for other reasons than those arising out of the rule established in Forth v. Chapman, as far as the conclusion in that case depended on the use of the word 'leaving,' it is necessary to hold that Mrs. Moyer is entitled only to the income of the said fund.    The $1,400 is distinctly charged upon the several purparts of the testator's real estate, and‘those who may become the owners are charged with the duty of paying the interest thereon to her, at the rate of five per cent, and the principal to her bodily heirs; and in case she shall die without bodily heirs 'then' the principal shall revert to his estate and be paid to his other children and their heirs.

"In Scott v. Price, 2 S. & R. 59, the testator gave his daughter certain bequests, and then proceeded: 'As also 550 pounds specie, to be paid to her in yearly payments, viz.: 100 pounds yearly, after she arrives at the age of eighteen years, until the said 550 pounds be paid. . . . It is further my will, that if it should please God that any of my before-mentioned sons or daughters should die before he, she or they attain the age of twenty-one years, unmarried or without lawful issue, that then, or in either case, the bequest or bequests hereinbefore made, to any or either of them, shall devolve to the survivor or survivors, to be divided share and share alike; and in case it should happen that my sons and daughters should also die, under age and without lawful issue, that then and in such case my whole estate real, before divided, shall descend to my brother James Scott's son, Alexander.'    Sarah was nine years old when testator died; she subsequently married Price, and died without issue.    TILGHMAN, C. J., said, p. 72: 'The question is, whether the legacy was vested absolutely in Sarah Price, or went over, on her death, to her surviving brothers and sisters.    An executory devise of a chattel, to take effect after an indefinite failure of issue, would be void, the contingency being more remote than the law permits.    It is granted, however, by the counsel for the defendant, that the contingency mentioned in this will is not too remote, because the dying without issue is not indefinite, but restricted to the time of the death of the first taker.    But a question has been made, whether money can be the subject of an executory devise; of this I entertain no doubt.    A sum of money devised

to one for life, with remainder to another, may be of great use to the first taker; he may put it to interest or invest it in goods or land, and thus make profit. . . . It was once supposed that a gift of a chattel for an instant was a gift forever, and that any limitation over would be void. But since the law of executory devises has been established there has been no difference between money and any specific chattel.'

'In Deil v. King, 6 S. & R. 29, the will was, p. 29 : 'I also give and bequeath unto Henry King, my grandson, . . . . and to his heirs and assigns, the sum of one thousand pounds, . . . to be paid to him in 200 pounds yearly payments; the first payment whereof to be made in May, 1808, and from hence 200 pounds successively until the whole shall be fully paid; nevertheless, if the said Henry King should die unmarried and without issue, that then and in such case the sum so bequeathed shall be equally divided to and among all my children, share and share alike; but in case he shall marry, and then die without issue from his body, that then in such case two thirds of the said legacy shall only be divided amongst my children as aforesaid, and one third of the said legacy shall be given to the widow.' The will was dated January 6, 1801; the testator died in 1812; Henry King died in 1816, never having been married; and at his death children of the testator survived. At pp. 30, 31, DUNCAN, J., says: 'However rigid the rule may be, in executory devises of real estate, as to the construction of the words, dying without issue, signifying an indefinite failure; yet the most strenuous adherents of this rule consider that, in executory bequests of personal estate, any words in the will, will be laid hold of to restrain the generality of the words, " dying without issue," and confine them to dying without issue living at the time of the person's decease, in order to support the intention of the testator; for by this construction the devise over becomes valid. Anderson v. Jackson, 16 Johns. 409; Executors of Moffat v. Strong, 10 Johns. 12.' At p. 33 it was declared to be demonstrative of an intention to limit over on a definite failure, that the gift over was given to persons in being at the death of the first taker.

" In Seibert v. Butz, 9 Watts, 490, the words of the will were ' All the above mentioned and what will be found in cash, bonds and notes, and all that what shall accrue out of my personal

property after my decease, shall be divided in equal shares unto my four daughters or their heirs as afterwards shall be mentioned. . . . Should one of my daughters die without issue or will, in that case her inheritance shall come to my other daughters then living, or to their offspring in equal shares, but to prevent misunderstanding, the share of the sister to her children.' In holding the language of the will to import a failure of issue at the decease of the daughters, GIBSON, C. J., p. 494, said : 'The daughter's will would speak at her death, and the contingency of dying without issue was evidently so closely coupled in the testator's apprehension with the idea of her dying with or without one, as to have been inseparable from it; and though there may be an indefinite dying without issue, there can be no indefinite dying without a will. The legacy was to go to the survivors if the dying sister made no will and had no children; but if she made a will, or perhaps an appointment in the nature of one, it was to go to her appointee; but to either, necessarily, at her death.'

" In Emma Myer's Appeal, 49 Pa. 111, the words of the bequest were : 'I give and bequeath unto my friend, J. R. Ingersoll . . . . the sum of $20,000 in trust for the use of my daughter, Emma J. Snyder, during life, and after her decease, for such issue, if any, as she may have ; I direct that the interest on said legacy shall commence from the day of my death, and that the same shall be paid to my daughter in monthly installments of $100.' READ, J., at p. 112, 113, said : 'The natural construction of the first legacy is to give only a life interest to the appellant with remainder to such issue as she may leave at her death. The rule is now certainly settled in England, that a legacy to A. for life, and after his death to his issue, gives the legatee an interest for life only, and that the issue take as purchasers. This was the rule laid down by Lord THURLOW in Knight v. Ellis, 2 Brown C. C. 570, and after various contradictory decisions it is now recognized as the established law of the land.'

" In Bentley v. Kauffman, 86 Pa., at p. 100–1, Chief Justice AGNEW said: 'Did Leon Kauffman take an estate for life, or absolutely, in the personalty bequeathed to him by his mother, Hannah Ann Kauffman? We think it was a bequest of the interest or income for life only. That a bequest of income or

profits will carry an absolute estate in the principal or corpus of the estate in some cases is well settled; but the ground of the conclusion in such instances is that no contrary intent of the testator appears to sever the product from its source; and the fruits, therefore, carry with them that which bears them. In the interpretation of a will, however, in order to gather the testator's intention, the words income and interest as distinguished from the corpus or principal, and the enjoyment for life only, have an important bearing: Earp's Appeal, 25 P. F. Smith, 119; Ogden's Appeal, 20 Id. 501. Hence, when the intent clearly appears to carry the corpus or principal over to others, the words of the will must be permitted to have their proper force. Here the bequest of the interest only for life, connected with the provision immediately following, is inconsistent with an intent to confer the principal absolutely upon him. The provision is: " If my son, Leon Kauffman, should die without issue, it is my desire that the whole amount of my investment be given to the Orphans' Asylum." '

" In Eichelberger's Estate, 135 Pa. 160, the words of the will, p. 161, were: 'I give and bequeath to my son, Martin Eichelberger, a sum of money which shall be of equal value with the share bequeathed to my other sons. The said sum of money to be placed on interest by my executor, and the interest thereof to be paid annually to my said son, Martin Eichelberger, during his natural life. In case the said Martin Eichelberger should die and leave no legitimate heirs of his own body, then the sum bequeathed to him shall revert to my other heirs.' At pp. 171-2, Mr. Chief Justice PAXSON says: ' Where it is the manifest intent of a testator to sever the product from its source, a bequest of an income of an estate will not carry an absolute estate in the principal: Bentley v. Kauffman, 86 Pa. 99. The trust is an active one, intended to preserve the contingent remainders: Kay v. Scates, 37 Pa. 31; Sheets's Est., 52 Pa. 257; Eachus's Ap., 91 Pa. 105. Moreover a limitation over on the death of the first taker, or a direction that the interest of money shall be paid annually to him for life, is held to be evidence that he has but a life interest: Myers's Ap., 49 Pa. 111; Sheets's Est., supra. . . . And in Reck's Ap., 78 Pa. 432, it was held that " all mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful." '

"I have presented the decisions so fully and quoted from them so copiously, in order that the distribution under review may be looked at, if possible, from the standpoint of every important and controlling case heretofore decided by the Supreme Court, and involving the construction of testamentary dispositions similar in character to the one now before me.

"A consideration of the cases cited, and they are representatives of the only class pertinent to the question before the court, has conclusively satisfied me that my former adjudication was erroneous, and that Mary Moyer has no interest in the corpus of the $1,400, charged by the testator on his real estate during her life.

"Under the will she is entitled only to the interest of the fund during her life; and the principal upon her death will pass to her issue, if she shall leave any, as purchasers; and, in the contingency of her dying without leaving issue, over to the other children of the testator."

*Error assigned* was above award.

*Morris H. Schaffer, Adam B. Rieser* with him, for appellant, cited: Wharton v. Shaw, 3 W. & S. 126; Smith's Ap., 23 Pa. 9; Pott's Ap., 30 Pa. 168; Mengel's Ap., 61 Pa. 248; Hoff's Est., 147 Pa. 636; Vaughan v. Dickes, 20 Pa. 515; Sheets's Ap., 52 Pa. 263; Middleswarth v. Blackmore, 74 Pa. 418; Williams v. Lewis, 6 H. L. Cas. 1013; 11 A. & E. Ency. L., p. 877; Guthrie's Ap., 37 Pa. 15; Good v. Fichthorn, 144 Pa. 292; Jauretche v. Proctor, 48 Pa. 471; Levy's Est., 153 Pa. 174; Morrison v. Truby, 145 Pa. 546; Reinoehl v. Shirk, 119 Pa. 108; Eichelberger v. Barnitz, 9 Watts, 447; Mickley's Ap., 92 Pa. 517; Fitzwater's Ap., 94 Pa. 142; Biddle's Est., 28 Pa. 59; Stevenson v. Fox, 125 Pa. 568; Millard's Ap., 87 Pa. 549.

*John H. Rothermel* of *Rothermel Bros., E. H. Shearer* with him, for appellee, cited: 3 Jarman on Wills, p. 297; Snyder's Ap., 95 Pa. 178; Clark v. Baker, 3 S. & R. 478; Forth v. Chapman, 1 P. Wms. 667; Seibert v. Butz, 9 Watts, 494; Pinbury v. Elkin, 1 P. Wms. 563; Hopkins v. Jones, 2 Pa. 69; Meyer's Ap., 49 Pa. 113; Wynch's Trusts, 17 Jur. 593; 11 A. & E.

Ency., p. 904 and notes; Roper, Leg. *1551; Bently v. Kauffman, 86 Pa. 99; Eichelberger's Est., 135 Pa. 171; Reck's Ap., 78 Pa. 432; Findlay v. Riddle, 3 Bin. 159; Walker v. Milligan, 45 Pa. 178; O'Rourke v. Sherwin, 156 Pa. 292; Self v. Tune, 6 Munf. 470; 22 A. & E. Ency. L. 515; Bradley v. Mosby, 3 Call, 50.

PER CURIAM, March 12, 1894:

We find no error in the conclusions reached by the learned president of the orphans' court; and for reasons given in his opinion we think the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellant.